UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LURENZO LEE WILLIAMS,<br><br>Petitioner,<br><br>v.<br><br>CENTRAL DISTRICT OF CALIFORNIA,<br><br>Respondent, | Case No. CV 17-5554 CBM(JC)<br><br>ORDER (1) SUMMARILY DISMISSING PETITION FOR WRIT OF HABEAS CORPUS; AND (2) DENYING A CERTIFICATE OF APPEALABILITY |

**I.    SUMMARY**

On July 27, 2017, petitioner Lurenzo Lee Williams, who is in state custody and is proceeding *pro se*, filed a Petition for Writ of Habeas Corpus/Petition to Have Detainer Removed ("Petition") seeking removal of a federal supervised release violation detainer placed on him in March 2016 that assertedly is affecting petitioner's state custody level and keeping him from receiving family visits and being transferred to another facility.[1]  (Petition at 3-4 [argument], 12 [detainer]). He appears to claim that the maintenance of, and the delay in lodging the federal detainer runs afoul of Article III of the Interstate Agreement on Detainers. (Petition at 3-4).

---

[1] Since filing the Petition, petitioner has been transferred from Mule Creek State Prison to Centinela State Prison. (Docket Nos. 1, 6).

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that a petition for writ of habeas corpus "must" be summarily dismissed "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Here, as it plainly appears from the Petition that petitioner is not entitled to the relief he seeks, the Petition must be dismissed.

## II. PERTINENT BACKGROUND[2]

On January 21, 2003, petitioner pleaded guilty in the First Federal Criminal Case to one count of violating Title 18, United States Code, section 2113(a) (bank robbery). On May 27, 2003, the assigned District Judge sentenced petitioner to a total term of 77 months in prison to be followed by a three-year term of supervised release.

On August 2, 2006, a Complaint charging petitioner with a violation of Title 18, United States Code, section 751 (escape) was filed in the Second Federal Criminal Case. The Complaint reflects, among other things, that petitioner was placed on escape status on July 28, 2006, and that his projected release date was January 11, 2007. On August 3, 2006, petitioner was arrested in Las Vegas, Nevada on an arrest warrant issued in the Second Federal Criminal Case, appeared in federal court in the District of Nevada, and was ordered detained and removed to

---

[2]The procedural history set forth in this section is derived from the Petition and supporting documents, public dockets and court records in the referenced cases of the California Court of Appeal, Second Appellate District ("California Court of Appeal") and the California Supreme Court (accessible via http://appellatecases.courtinfo.ca.gov) of which this Court takes judicial notice, and the public docket and court records in the following cases in the Central District of California ("CDCA") and the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") of which this Court again takes judicial notice: (1) United States v. Williams, CDCA Case No. CR 01-400 FMC ("First Federal Criminal Case"); (2) United States v. Williams, CDCA Case No. 06-1424M ("Second Federal Criminal Case"); (3) Williams v. Grounds, CDCA Case No. CV 12-7176 CBM(JC) ("First Federal Habeas Case"); and (4) Ninth Circuit Case No. 15-56559 ("Ninth Circuit Action"). See Fed. R. Evid. 201; Harris v. County of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (court may take judicial notice of undisputed matters of public record including documents on file in federal or state courts).

the Central District of California. On December 19, 2006, petitioner made his initial appearance in the Central District of California in the Second Criminal Case and was ordered detained. On December 20, 2006, at the government's request, a Magistrate Judge ordered that the Complaint filed in the Second Federal Criminal Case be dismissed, that petitioner be released if in custody solely on the charge contained therein, and that petitioner be transferred by the United States Marshal's Service to the custody of the Bureau of Prisons to serve the remainder of the sentence imposed in the First Federal Criminal Case. On or before January 16, 2007 (see infra note 3), petitioner was apparently released from prison and placed on supervised release.

The docket for the First Federal Criminal Case reflects a sealed entry on February 7, 2007. In light of the other facts discussed below, the Court presumes that the District Judge in the First Federal Criminal Case issued a supervised release violation warrant on or about February 7, 2007.

In February 2007 – around the same time that the docket in the First Federal Criminal Case reflects a sealed entry – petitioner was arrested by state authorities for the commission of multiple robberies/an attempted robbery and was thereafter charged in Los Angeles County Superior Court jury in Case No. BA316400 ("State Case").³ On April 30, 2009, a jury in the State Case found petitioner guilty of second degree robbery (counts 1, 2, 4, 5) and attempted second degree robbery (count 3). At a bifurcated trial on prior conviction allegations, the trial court found true allegations that petitioner suffered five prior convictions within the meaning of California Penal Code sections 1170(a)-(d), 667(b)-(i), 667(a) and 667.5(b). The trial court sentenced petitioner to a total of 95 years to life in state prison.

---

³The robberies/attempted robbery charged in the State Case were alleged to have occurred on July 28, 2006 – the date petitioner was placed on escape status as reflected in the Complaint filed in the Second Federal Criminal Case – and on January 16, 2007, January 29, 2007, January 30, 2007, and February 14, 2007 – apparently after he was released from prison and placed on supervised release in the First Federal Criminal Case.

On May 2, 2011, in Case No. B217434, the California Court of Appeal affirmed the judgment in the State Case. On August 24, 2011, in Case No. S194047, the California Supreme Court denied review of the judgment in the State Case.

On August 21, 2012, petitioner filed a federal Petition for Writ of Habeas Corpus by a Person In State Custody ("First Federal Petition"), challenging the judgment in the State Case in the First Federal Habeas Case. On September 21, 2015, this Court denied the First Federal Petition and dismissed the First Federal Habeas Case with prejudice. Judgment was entered accordingly on September 22, 2015. On June 1, 2016, the Ninth Circuit denied petitioner's request for a certificate of appealability in the Ninth Circuit Action.

On March 29, 2016 – after Judgment was entered in the First Federal Habeas Case and while the Ninth Circuit Action was pending – the United States Marshal's Service lodged with the state prison where petitioner was then housed, a "Detainer Based on Violation of Probation and/or Supervised Release" ("Detainer") which reflects that the United States District Court for the Central District of California had issued an arrest warrant charging petitioner with violation of the conditions of probation and/or supervised release in the First Federal Criminal Case. The Docket for the First Federal Criminal Case reflects the issuance of Notices of Discrepancy and related Orders ("Discrepancy Notices") on February 9, 2017 and April 12, 2017, rejecting requests petitioner submitted in the First Federal Criminal Case to have the Detainer removed on multiple grounds, including that petitioner may continue to be represented by counsel concerning matters relating to supervised release. Such rejected requests – which are attached to the Discrepancy Notices – reflect that (1) petitioner was released from federal prison in 2006 and placed on supervised release; (2) in 2007 he was arrested and convicted of multiple robbery charges in Los Angeles County Superior Court and sentenced to 95 years to life in state prison; and (3) on March 29, 2017 [sic], the

U.S. Marshal lodged the Detainer against petitioner for a violation of supervised release in the First Federal Criminal Case.

### III.  DISCUSSION

A state prisoner may obtain federal habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Interstate Agreement on Detainers ("IAD") is both a state law and a law of the United States. Carchman v. Nash, 473 U.S. 716, 719 (1985); Cuyler v. Adams, 449 U.S. 433, 442 (1981); 18 U.S.C. App. § 2; Cal. Penal Code § 1389. More specifically, it is an interstate compact entered into by 48 states, the United States, and the District of Columbia that creates uniform procedures for lodging and executing a detainer by one State against a prisoner serving a term of imprisonment in another State.[4] United States v. Lualemaga, 280 F.3d 1260, 1263 (9th Cir.), cert. denied, 536 U.S. 949 (2002). In pertinent part, the IAD essentially requires that (1) a warden having custody of a prisoner promptly inform him of (a) the source and contents of any detainer lodged against him on any untried indictment, information, or complaint; and (b) his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based; and (2) a prisoner serving a term of imprisonment, against whom such a detainer has been lodged, be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint. 18 U.S.C. App. 2, § 2, art. III(a), (c); Cal Penal Code § 1389, art. III(a), (c). However, the IAD neither requires that a detainer be filed/lodged, nor applies to detainers based on probation or supervised release

---

[4]All parties to the IAD, including the United States, are defined as "States." 18 U.S.C. App. 2, § 2, art. II(a).

5

violations. Fex v. Michigan, 507 U.S. 43, 50 n.4 (1993) ("[T]he IAD does not *require* detainers to be filed[.]") (emphasis original); Carchman, 473 U.S. at 726, 734 (Article III of IAD does not apply to detainers based on probation violation charges); United States v. Gomez-Diaz, 415 Fed. Appx. 890, 894-95 (10th Cir. 2011) (IAD "clearly does not apply to supervised release revocation detainers"); United States v. Ruiz-Avarez, 2010 WL 3063919, *1 (D. Or. Aug. 3, 2010) (applying Carchman to supervised release violation detainers, collecting federal district court cases doing same, and noting "court sees no reason to differentiate between probation and supervised release violations in determining the lack of application of Article III(a) of the [IAD][]").

First, to the extent petitioner seeks to have the Detainer removed assertedly because the government has not complied with Article III of the IAD, he is not entitled to federal habeas relief because, as noted above, the IAD does not apply to detainers based on supervised release violation warrants. Carchman, 473 U.S. at 726, 734; Gomez-Diaz, 415 Fed. Appx. at 894-95; Ruiz-Avarez, 2010 WL at *1.

Second, to the extent petitioner complains of the government's delay in lodging the Detainer and proceeding with the supervised release violation, he is likewise not entitled to federal habeas relief. There is no Sixth Amendment right to a speedy trial in supervised release revocation proceedings. United States v. Gavilanes-Ocaranza, 772 F.3d 624, 628 (9th Cir. 2014), cert. denied, 136 S. Ct. 225 (2015). While a defendant does have a right to a reasonably prompt hearing on revocation of supervised release rooted in the Fifth Amendment's Due Process Clause (id.; United States v. Santana, 526 F.3d 1257, 1259 (9th Cir. 2008)), such right is not triggered until the violator is in custody on the violation warrant and is not triggered when such warrant is unexecuted and is merely placed as a detainer at an institution where the violator is already in custody serving a sentence for a crime committed while on supervised release. See Moody v. Daggett, 429 U.S. 78, 86-89 (1979) (parole violation warrant); United States v. Bartholdi, 453 F.2d 1225,

1226 (9th Cir. 1972) (probation violation warrant);[5] United States v. Magana-Colin, 359 Fed. Appx. 837, 838 (9th Cir. 2009) (supervised release violation warrant), cert. denied, 560 U.S. 958 (2010). As the foregoing authorities make clear, the federal government was not required to lodge the Detainer or writ petitioner out of state custody and into federal custody for purposes of executing the supervised release violation warrant issued in the First Federal Criminal Case and petitioner is not entitled to a hearing on the supervised release violation charge(s) before his sentence in the State Case expires.[6]

Third, to the extent petitioner otherwise suggests that he is entitled to federal habeas relief due to the impact the Detainer is assertedly having on his security classification, which in turn, impacts his ability to receive visitors and a transfer, his claim is not cognizable on federal habeas review. Prisoners do not have a constitutional right to a particular security classification, to be transferred from one facility to another, to avoid such a transfer, or to unfettered visitation. See Dunn v. Castro, 621 F.3d 1196, 1202-05 (9th Cir. 2010) (visitation); Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460-61 (1989) (visitation); Hernandez v.

---

[5]Although Moody and Bartholdi respectively involved a parole violation warrant and a probation violation warrant, proceedings for revocation of probation, parole and supervised release are treated as equivalents for due process purposes. Santana, 526 F.3d at 1259 n.2.

[6]Indeed, even though it appears that petitioner's term of supervised release has not yet expired, the supervised release revocation hearing in the First Federal Criminal Case could properly go forward even if petitioner's supervised release term has expired by the time of the revocation hearing. Pursuant to 18 U.S.C. § 3583(i), the power of a federal court to revoke a term of supervised release for violation of a condition of supervised release extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant has been issued on the basis of an allegation of such a violation as in this case. The "reasonably necessary" period of time referenced in Section 3583(i) encompasses delays attributable to a defendant's incarceration on state charges. United States v. Morales-Isabarras, 745 F.3d 398, 401 (9th Cir. 2014) (quoting United States v. Garrett, 253 F.3d 443, 449 (9th Cir. 2001), cert. denied, 535 U.S. 977 (2002)). In short, the District Court may properly postpone adjudication of the supervised release violation charge(s) in the First Federal Criminal Case until after petitioner is released from state custody. See Garrett, 253 F.3d at 450.

Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (classification status) Rizzo v. Dawson, 778 F.2d 527, 530-31 (9th Cir. 1985) (transfer). Accordingly, the deprivation of such matters would not violate the Constitution, laws or treaties of the United States, rendering petitioner unable to demonstrate that he is entitled to federal habeas relief due to being in custody in violation of the same.

**IV    ORDERS**

For the foregoing reasons, IT IS ORDERED that the Petition is dismissed and that judgment be entered accordingly.

The Court also concludes that a certificate of appealability is unwarranted in this case because petitioner has failed to make a substantial showing of the denial of a constitutional right and, under the circumstances, jurists of reason would not disagree with the Court's determination that the Petition should be summarily dismissed. Thus, a certificate of appealability is denied.

DATED: November 15, 2017

                                   HONORABLE CONSUELO B. MARSHALL
                                   SENIOR UNITED STATES DISTRICT JUDGE

Presented this 9th day of November 2017 by:

       /s/
_____
HONORABLE JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE